IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BENJAMIN BURGESS, RHONDA BURGESS, HEIDI HOWARD, JOYCE MARTIN, BETH KARAMPELAS, TERRI DACY, and MICHAEL DACY, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) | CIVIL ACTION NO.  1:13-cv-02217 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| RELIGIOUS TECHNOLOGY CENTER, INC., ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL, NARCONON INTERNATIONAL, and NARCONON OF GEORGIA, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
ASSOCIATION FOR BETTER LIVING AND EDUCATION
INTERNATIONAL'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

Plaintiffs' Complaint stems from the Defendants' false, deceptive, or

misleading business practices, which Plaintiffs' counsel uncovered after filing a

case against Defendants Narconon of Georgia and Narconon International for the

wrongful death of a former Narconon student.  That case led to three years of

litigation, extensive discovery, and a local news investigation, all spurred by the wrongful conduct of the Defendants.  As such, Plaintiffs' claims arise from years of research and investigation.  Plaintiffs file this response in opposition to Defendant Association for Better Living and Education's ("ABLE") Motion to Dismiss, showing as follows:

## I.  INTRODUCTION

Defendant ABLE's Motion to Dismiss amounts to an attempt to impermissibly heighten the pleading standards applicable to Plaintiffs' claims and evade meaningful litigation.  Rather than respond to the legitimate, plausibility stated allegations of Plaintiffs' Complaint, Defendant ABLE contests Plaintiffs' factual allegations and improperly attempts to burden the Plaintiffs with establishing a reasonable likelihood of success on the merits of their claims. However, as shown herein, Plaintiffs met the appropriate burden at this stage of litigation, and Defendant's Motion to Dismiss must be denied.

Plaintiffs, Benjamin Burgess, Rhonda Burgess, Heidi Howard, Joyce Martin, Beth Karampelas, Terri Dacy, and Michael Dacy, filed their Complaint individually and on behalf of the class of others similarly situated, against Defendants Religious Technology Center, Inc. ("RTC"), ABLE, Narconon International ("International"), and Narconon of Georgia, Inc. ("NNGA"),

asserting claims sounding in fraud, contract, quasi-contract, and negligence, as well as Georgia's Racketeer Influence and Corrupt Organizations ("RICO") statute, O.C.G.A. § 16-14-1, *et seq.*

Plaintiffs and the proposed class members paid money to one or more of the Defendants to enroll in the Narconon program at NNGA, and to cover costs associated with books, housing, and related goods and services. (Compl. ¶ 31). The Narconon program was established in 1966 as a drug and alcohol rehabilitation program based on the writings of L. Ron Hubbard, a science-fiction writer and the founder of the Church of Scientology. (*Id.* ¶ 38). Narconon's treatment for drug and alcohol addicts is based exclusively on Hubbard's writings, also known as "technology" or "tech." (*Id.* ¶ 41). Narconon's proponents believe that strict adherence to the Hubbard technology alone will completely address the rehabilitation needs of its patients. (*Id.* ¶ 46). Therefore, patients receive no counseling or education in drug and alcohol rehabilitation, and the therapeutic discussion of drugs and their effects is actually discouraged. (*Id.*).

Defendant ABLE operates as an umbrella group that oversees the drug and alcohol rehabilitation activities of the Church of Scientology. (*Id.* ¶ 24). ABLE is responsible for ensuring that programs using Hubbard's technology, including Narconon, meet the Church of Scientology's and RTC's exacting standards. (*Id.*

¶ 65).  To that end, ABLE licenses the Narconon materials to International, conducts inspections of Narconon centers, and otherwise actively manages the daily operations of International and NNGA.  (*Id.* at 24, 64-66).  International owns, licenses, operates, and otherwise directs drug and alcohol rehabilitation services at Narconon centers, including NNGA.  (*Id.* ¶ 38).  As the parent/licensor of Defendant NNGA, Defendant International exercises direct control over the time, manner, and method of NNGA's operations. (*Id.* ¶ 27).  Finally, Defendants ABLE, International, and NNGA are controlled by Defendant RTC, which oversees Church of Scientology activities and serves as the final arbiter and enforcer of orthodoxy for all Scientology-related activities and organizations.  (*Id.* ¶¶ 21-22).

Through its websites, marketing materials, advertising, and personnel, the Defendants have repeatedly made a vast array of false and misleading claims and employed other deceptive techniques in their dealings with drug and alcohol addicts and their families.  (*Id.* ¶ 74).  These misrepresentations pertain to, among other things: the effectiveness of the Narconon program, which consists of a "sauna and vitamin" program and written "training routines" originally devised to teach communication skills to Scientologists; Narconon's purported success rate; Narconon's connection to Scientology; the certifications of NNGA's staff;

NNGA's housing and "drug-free" environment; and the nature of its government licensing. (*Id.* ¶¶ 74-105). By reason of their justified reliance on Defendants' false statements and material misrepresentations, Plaintiffs and all class members suffered actual physical, mental, and economic harm, and they seek restitution, compensatory damages, and punitive damages. (*Id.* ¶¶ 170-72).

## II.  ARGUMENT AND CITATION OF AUTHORITY

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (holding that a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim "across the line from conceivable to plausible" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). A claim is facially plausible when the plaintiff's

factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals . . . ." *Surowtiz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). With this background in mind, determining whether a complaint states a plausible claim for relief will, as the Supreme Court has stated, "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79.

## A. Plaintiffs Have Standing to Bring their Claims

Contrary to Defendant's assertions, Plaintiffs have sufficiently alleged Article III standing. To establish standing, a plaintiff must allege an injury in fact, causation, and redressability. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1080 (11th Cir. 2002). The required showing "depends to some extent on the stage of the litigation at which the standing issue is being decided . . . ." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts

that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quotations omitted).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Allen v. Wright*, 468 U.S. 737, 750-51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quotation omitted). The "core component" of standing is that "[a] plaintiff must allege personal injury fairly traceable to the defendant's alleged unlawful conduct and likely to be redressed by the requested relief." *Id.* at 751.

Here, Plaintiffs have alleged, in part, that, after paying "money to one or more of the Defendants to procure drug or alcohol rehabilitation services," they fell victim to "Defendants' false, deceptive, or misleading business practices," including fraudulent misrepresentation, breach of contract, and civil racketeering, causing them "actual physical, mental, and economic harm." (Compl. ¶¶ 31, 34, 111-69). As a result, Plaintiffs seek compensatory and punitive damages. (Compl. ¶¶ 171-72). Through these allegations, Plaintiffs have alleged a "distinct and palpable" injury, "fairly traceable to the challenged action(s)" of the Defendants, requesting damages that would provide relief. *See Allen*, 468 U.S. at 751. As such, Plaintiffs' claims, as alleged, provide them with standing.

In an attempt to minimize its own wrongdoing and evade Plaintiffs'
allegations entirely, Defendant ABLE argues that Plaintiffs suffered no injury
because they "paid for NNGA program services, which were provided." (Def.
ABLE's Br. in Supp. of Mot. to Dismiss ("Def. Br.") at 24-25). Defendant skirts
the true issues raised by Plaintiffs' Complaint, proclaiming, "No drug and alcohol
rehabilitation program can or does guarantee that an enrolled student will be
'cured' and never relapse again." (*Id.* at 25).

However, Plaintiffs have not based their allegations on the Narconon
program's failure to "cure" its students.[1] Plaintiffs have alleged that they were
defrauded and induced by Defendants to devote their money and energy to a
program that was effectively a criminal enterprise, not a rehabilitation program.
As such, this Court should reject as inapposite Defendant's reference to cases in
which the plaintiff: did not allege that a product was ineffective; did not personally
experienced a product's problems; and did not allege causation of injury. (*See* Def.
Br. at 23-24).

Defendant also argues that Plaintiffs made "no attempt" to connect their
injuries to ABLE. (*Id.* at 22). To the contrary, Plaintiff alleged that ABLE is an
"controls the time, manner, and method of International's and NNGA's businesses

---

[1] Moreover, the effectiveness of Narconon's program would be a fact question, not
a basis for dismissal).

by actively managing their daily operations, which includes conducting inspections of Narconon centers and creating, licensing, and approving International's and NNGA's marketing materials," by, among other things, conducting inspections of the Narconon centers, providing "technical and financial assistance to individual Narconon centers, including NNGA," "promot[ing] them through nationwide advertising and government lobbying," and receiving, in exchange, a percentage of each Narconon center's corrected gross income.   (Compl. ¶¶ 24, 69-71).

## B.  Plaintiffs Sufficiently Pled their Contract Claims

Defendant's response to Plaintiffs' contract claims is an attempt both to prevent the people who actually paid for NNGA's "rehabilitation services" from seeking any relief for the breach of their agreement, and to artificially distance themselves from the obligations under that agreement.

### 1.  *Breach of Contract (Count Two)*

As an initial matter, to the extent Defendant ABLE adopts Defendant NNGA's arguments as they pertains to Plaintiffs' breach of contract claim (*see* Def. Br. at 6, n.1), Plaintiffs hereby adopt the relevant portions of their response to Defendant NNGA's Motion to Dismiss.

In an action for breach of contract, the agreement alleged to have been breached may consist of multiple documents.  *See Fisher v. Toombs Cnty. Nursing*

*Home*, 479 S.E.2d 180, 183 (Ga. Ct. App. 1996).  In addition to encompassing

multiple documents, an agreement may encompass implied terms "where it is

reasonable and necessary to effect the full purpose of the contract and it is so

clearly within the contemplation of the parties that they deemed it unnecessary to

state."  *Id.* at 184.  Thus, for example, where a plaintiff signed a contract to be

financially responsible for the defendant nursing home's services to her husband,

the Georgia Court of Appeals held that the defendant had an implied duty to

inform the plaintiff when her husband was released from the nursing home.  *Id.* at

183-84.  Moreover, under Georgia law, an agreement "impose[s] upon each party a

duty of good faith and fair dealing in the performance and completion of their

respective duties and obligations," which includes "substantial compliance with the

spirit, and not merely the letter, of a contract."  *Id.* at 184.

     Here, the contracts entered into by the parties illustrate that the agreement

consisted of multiple documents.  For example, the "Financial Policy and

Agreement Form," signed by Plaintiffs and others assuming financial

responsibility for the contract, references a separate document, the "Student Rules

of Conduct," as part of its refund policy.  (*See* Def. Br., Exh. A at 3-4).  The

Financial Policy states, "[The Student Rules of Conduct] have been explained to

you and by signing them you have acknowledged that you understand all of these

rules." (*Id.* at 4). The "Admission and Services Agreement" sets forth the elements and courses of Narconon's "social educational based drug rehabilitation program." (*Id.* at 5). The Admission Agreement also references the Rules of Conduct, and it is signed by both the Narconon student *and* the "Financier," *i.e.*, Plaintiffs and other class members. (*Id.* at 5-6). Finally, the Rules of Conduct, also signed by the Narconon student and the "Student's Representative," *i.e.*, Plaintiffs and the class members, contain provisions regarding NNGA's policies, including:

2. <u>Drugs And Alcohol</u>: Non-prescribed drugs and alcohol are forbidden to be brought into the Narconon facility and may not be consumed away from the Narconon facility, while you are on the program. Drug use is grounds for immediate dismissal without refund.

3. <u>Selling or Possession of Illegal Drugs</u>: Selling, possessing or giving illegal drugs to another student is grounds for immediate dismissal without refund as well as reporting to appropriate legal authorities as indicated by the situation.

*Id.* at 7.

A review of these documents reveals that Plaintiffs may allege breach of contract on the grounds alleged in their Complaint. (*See* Compl. ¶¶ 115-18). Defendant argues that the contract did not contain guarantees that, *inter alia*: NNGA was compliant with applicable laws and regulations; NNGA staff members were certified in addiction counseling; and NNGA would provide a drug-free

environment for its patients. (Def. Br. at 7-9). However, both to fulfill its agreement to provide drug and alcohol rehabilitation and to discharge its duty to perform in good faith, NNGA was required to comply with the aforementioned criteria in order to actually and legally treat drug and alcohol addiction. *See, e.g., Regional Pacesetters v. Eckerd Drugs of Ga.*, 358 S.E.2d 481, 483 (Ga. Ct. App. 1987) ("[W]hatever may be fairly implied by the terms of the agreement is in the eyes of the law embodied in the agreement." (quotation omitted)). Given that a defendant's compliance with the "spirit" of contract may be a jury question, *see Fisher*, 479 S.E.2d at 184, Defendant ABLE's motion to dismiss on the basis that there was no breach of the contract is improper.

Finally, although Defendant ABLE was not named specifically in the documents constituting the agreements at issue (*see generally* Def. Br., Exh. A), Georgia courts have held that, where a subsidiary company is being used and drained of resources by the parent company to improve the position of other subsidiaries, the issue of whether the parent company and the subsidiary company are liable for breach of contract should go to the jury. *See, e.g., Trans-Amer. Comms., Inc. v. Nolle*, 214 S.E.2d 717, 719-20 (Ga. Ct. App. 1975). Plaintiffs have alleged that Defendant actively ran each Narconon facility by, among other things, overseeing the Church of Scientology's secular activities, licensing

12

Hubbard's material to Narconon International, inspecting Narconon centers, including NNGA, to check for compliance, providing technical and financial support to Narconon International, and promoting Narconon through nationwide advertising and government lobbying. (Compl. ¶¶ 62-66, 69-73). As such, Plaintiffs sufficiently pled a breach of contract claim against Defendant ABLE.

### 2. *Unjust Enrichment (Count Three)*

Contrary to Defendant's position, Plaintiffs' allegation of a breach of contract claim does not prevent them from alleging unjust enrichment. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims."). In the event that this Court determines that Plaintiffs did not allege a plausible breach of contract claim as to Defendant ABLE, Defendant would remain liable under Plaintiffs' allegation of unjust enrichment. (*See* Compl. ¶¶ 119-21).

"The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Smith Serv. Oil Co. v. Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001). Defendant argues that Plaintiffs are prevented from alleging an unjust enrichment claim because there is an express contract with

NNGA.  (Def. Br. at 16-17).  However, should this Court determine that the contract between the parties was unenforceable or did not encompass Plaintiffs' injuries at the hands of the Defendants, Plaintiffs could proceed under the theory of unjust enrichment.[2] *See, e.g., Cochran v. Ogletree*, 536 S.E.2d 194, 196-97 (Ga. Ct. App. 2000).

Defendant also argues that any benefit retained by it was conferred by NNGA, not the Plaintiffs.  Defendant cites a case in which the plaintiff "failed to cite to any authority for pursuing an unjust enrichment claim against a third party who indirectly received a benefit" for the proposition that there is "no authority under Georgia law" under which Plaintiffs can argue that Defendant was unjustly enriched.  (Def. Br. at 18 (citing *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007)).  However, in *Brenner*, the Plaintiffs sought to bring breach of contract and unjust enrichment claims against a third-party supplier, Future Graphics, who delivered goods in fulfillment of a business-opportunity

---

[2]  In fact, in the case that Defendant cites in support of its argument that Plaintiffs are limited to recovery under the written contract, *Brown v. Cooper*, 514 S.E.2d 857, 860 (Ga. Ct. App. 1999), the Georgia Court of Appeals rejected the unjust enrichment claim because a third party, not the plaintiffs, conferred the benefit to the defendant.  Plaintiffs here clearly conferred a benefit to Defendants by paying money to the Defendants for NNGA's services.  As such, *Brown v. Cooper* does not support the proposition for which it is cited.

contract between the plaintiffs and a separate company.  *Brenner*, 258 F.R.D. at 565-66.

Defendant ABLE is not a third party—it is an organization that directly and actively controls the daily operations of NNGA, and handles marketing, advertising, and lobbying for Narconon centers.  As such, and contrary to Defendant's assertion, Plaintiffs alleged that Defendant unlawfully, unjustly, and directly obtained payment from Plaintiffs, resulting in their unjust enrichment. (*See* Compl. ¶ 119 ("Plaintiffs and the class members paid money to one or more of the Defendants[.]"; ¶ 120 ("Defendants unlawfully and unjustly obtained this payment."); ¶ 121 ("Defendants received income to which they had no legal right[.]").

### 3. *Detrimental Reliance (Count Four)*

Finally, Defendant argues that detrimental reliance is not an independent cause of action under Georgia law.  In Count Four, Plaintiffs alleged that they reasonably relied on Defendants' representations that NNGA patients would receive drug of alcohol rehabilitation services, that Defendants failed to live up to those representations, and Plaintiffs were "harmed by their reliance on Defendants' promise to perform," entitling them to damages.  (Compl. ¶ 125).  Plaintiffs admittedly mislabeled this count as alleging detrimental reliance, rather than

15

promissory estoppel.  *See Houston v. Houston*, 600 S.E.2d 395, 396 (Ga. Ct. App. 2004) ("The elements of a promissory estoppel cause of action are: (1) defendant[s] made certain promises, (2) defendant[s] should have expected that plaintiffs would rely on such promises, (3) the plaintiff[s] did in fact rely on such promises, and (4) injustice can be avoided only by enforcement of the promise." (alterations omitted)).  Should this Court determine that Count Four was improperly pled, Plaintiffs request the opportunity to amend.  *See* Fed.R.Civ.P. 15(a).

## C.  Plaintiffs Sufficiently Pled their Fraud Claim (Count One)

Pursuant to Fed.R.Civ.P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  The purpose of this particularity requirement is to "alert[ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges of immoral and fraudulent behavior."  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotations omitted).  Rule 9's particularity requirements must be read in conjunction with Rule 8 "so as not to abrogate the concept of notice pleading."  *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988).  Rule 9 does not require the plaintiff to explain his entire case, only that he state the actions that

allegedly constitute fraud.  *United States v. Gen. Dynamics*, 315 F. Supp. 2d 939, 945 (N.D. Ill. 2004).

While Defendant ABLE argues that Plaintiffs were required to provide the names, times, dates pertaining to Defendants' fraud, federal courts have observed that Rule 9(b)'s requirements can be met in other ways.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).  A complaint may meet this requirement by describing the nature of the alleged misrepresentations, the general time frame, and the parties involved, without alleging the exact time and particular place of each misrepresentation.  *See id.* at 1371.

In the "Parties" portion of their Complaint, Plaintiffs provided a time period for the fraud by specifying when each proposed class representative sought the services of NNGA.  (*See* Compl. ¶¶ 2, 6, 10, 14, 17).  Plaintiffs then alleged eleven specific fraudulent statements and/or acts made by Defendants.  (*See* Compl. ¶ 111).  In so doing, Plaintiffs sufficiently alleged the "what" and "when" of the fraud.  *See, e.g., Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1319-20 (D.C. Fla. 2002) (finding that the plaintiffs sufficiently alleged fraud when complaint included, *inter alia*, specific misrepresentations and where they occurred). Likewise, Plaintiffs set forth the relationship among the Defendants as it pertains to

the perpetrated fraud.  (*See id.* ¶¶ 20-28, 62-73).  Plaintiffs have also alleged that:

Defendants RTC, ABLE, and International control the time, manner, and method

of NNGA's operations (*Id.*); Defendants ABLE, International, and NNGA

misrepresent their connection to the Church of Scientology (*Id.* ¶¶ 80-81); and

patients are referred to Narconon through purportedly objective Internet and

telephone services that are actually run and/or paid for, in whole or in part, by

International and/or NNGA (*Id.* ¶¶ 87-89).

     Given this factual background, as alleged by Plaintiffs, combined with the

number of ways in which Plaintiffs and the proposed class members have been

defrauded, Plaintiffs complied with Rule 9(b) by providing Defendants with

enough information to meaningfully respond.[3]  *See, e.g., Gen. Dynamics*, 315 F.

Supp. 2d at 945 (finding that a *qui tam* relator alleging fraud was not required to

provide names of employees who allegedly defrauded the government because

those identities were in exclusive possession of employer).

## D.  Plaintiffs Sufficient Pled their Georgia RICO Claims (Counts Six to Ten)

     The Georgia RICO Act was enacted by the Georgia legislature to impose

criminal penalties against those engaged in an "interrelated pattern of criminal

---

[3] Plaintiffs also provided support for one of Defendants' fraudulent statements, regarding the Narconon program's success rate, by attaching an email acknowledging that the 70% success rate quoted to Plaintiffs and class members was not supported by scientific evidence.  (*See* Compl., Exh. B).

activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury," O.C.G.A. § 16-14-2(b), *see* O.C.G.A. § 16-14-5, and to provide civil remedies to compensate those injured by reason of such acts. *Williams Gen. Corp. v. Stone*, 614 S.E.2d 758, 759 (Ga. 2005). The Georgia RICO Act contains a liberal construction provision, providing that the Act shall be liberally construed to effectuate the remedial purposes embodied in its operative provisions. *See* O.C.G.A. § 16-14-2(b).

As an initial matter, Defendant asserts that Plaintiffs failed to allege that its RICO predicate acts were the proximate, "but for" cause of their injuries. (Def. Br. at 12-13). This is completely false. Under the predicate acts of theft by deception, mail and wire fraud, false statements to a government agency, credit card fraud, and identity fraud, Plaintiffs have alleged that their injuries were "a direct and proximate result" of Defendants' racketeering activity. (*See* Compl. ¶¶ 136, 144, 153, 161, 169). Defendant illustrates its misunderstanding of Plaintiffs' burden at the motion-to-dismiss phase, arguing, "Plaintiffs have *failed to show* that the alleged RICO violations were the 'but for' and proximate causes of any injuries they allegedly suffered." (Def. Br. at 13 (emphasis added)). However, Plaintiffs are not required to show or prove proximate cause at this phase of litigation – they

are required to plead it, with all reasonable inferences made in their favor. *See Iqbal*, 556 U.S. at 678.

As an additional matter, contrary to Defendant's assertion, Plaintiffs are not required to plead civil RICO claims with particularity if they do not sound in fraud. *See Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355-56 (11th Cir. 2008) ("We now hold that RICO predicate acts not sounding in fraud need not necessarily be pleaded with the particularity required by Fed.R.Civ.P. 9(b)."). As such, Defendant's arguments regarding Rule 9(b) are insufficient to dismiss Plaintiffs' Georgia RICO claims based on theft by deception and false statements to a government agency. Moreover, because the foregoing, flawed arguments are the only objections Defendant raises to the predicate acts of theft by deception and making false statements to a government agency, Plaintiffs' corresponding RICO Claims (Counts Six and Eight), at a minimum, should be allowed to proceed.

### 2. *Mail/Wire Fraud (Count Seven)*

The offenses of mail and wire fraud require that a person: (1) intentionally participates in a scheme to defraud; and (2) uses or "causes" the use of the mail or wires for the purpose of executing the scheme. *United States v. Ward*, 486 F.3d 1212, 1221-22 (11th Cir. 2007); *see also* 18 U.S.C. § 1343 ("Whoever, having

20

devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.").

Plaintiffs have met the requirements to state a Georgia RICO claim based on mail and wire fraud by alleging, *inter alia*, "Defendants *distributed* the [listed] false statements and/or representations *to* Plaintiffs and the class members through the mail, telephone wire facilities, and/or Internet*,*" and "Plaintiffs and all class members were unaware of the falsities of Defendants' material statements and representations, and *actually relied* upon those statements and misrepresentations." (Compl. ¶ 142-43 (emphasis added)).  On the basis of these allegations alone, Defendant's inaccurate argument that Plaintiffs never "specifically state[d] that they *received* those allegedly false representations by way of mail or wire" must be rejected.  (Def. Br. at 14).

As to Defendant's argument that "Plaintiffs do not identify a single letter or email that contained any alleged misrepresentations by ABLE through the mail or wire," (Def. Br. at 15), Plaintiffs alleged that the "Defendants" committed the mail

or wire fraud, and they alleged that Defendant ABLE exercised control over the time, manner, and method of NNGA's daily operations.  As such, given the liberal construction provision contained in Georgia's RICO statute, Plaintiffs sufficiently alleged a RICO claim based on mail or wire fraud.

### 3.  Credit Card Fraud and Identity Theft (Counts Nine and Ten)

Plaintiffs also properly pled credit card fraud and identity theft as it pertains to those Plaintiffs who fell victim to this aspect of Defendants' fraud: Plaintiffs Benjamin Burgess, Rhonda Burgess, Michael Dacy, and Terri Dacy.  (*See* Compl. ¶¶ 4, 19).  To the extent that Defendant ABLE argues that not all Plaintiffs and proposed class members were victims of credit card fraud and identity theft, the Plaintiffs and class members that have been victims of these RICO predicate acts can be dealt with through the use of subclasses, if necessary.

## E.  Plaintiffs Sufficiently Pled Negligence *Per Se* (Count Five)

Plaintiffs have asserted that Defendant ABLE is liable for Defendants International's and NNGA's acts of negligence *per se*, due to the level of its control over International, NNGA, and other Narconon centers.  (*See* Compl. ¶¶ 62-73).  For the violation of a statute or regulation to amount to negligence *per se*, Georgia courts look to the purposes of the legislation to determine: (1) whether the injured person falls within the class of persons it was intended to protect; and (2)

whether the harm complained of was the harm it was intended to guard against. *Walter v. Orkin Exterminating Co.*, 385 S.E.2d 725, 728 (Ga. Ct. App. 1989).

For example, in *Walter*, the court considered state administrative rules governing pest control companies providing that the companies should, for example, notify the local fire and police departments before fumigating a residential or commercial building, and post a watchman after fumigation to "prevent the entry of an unauthorized person." *Id.* at 726-27.  At some point after the defendant company in *Walter* fumigated the plaintiff's house, the house caught fire and burned to the ground.  The court determined that the defendant's failure to post a watchman after fumigation, who presumably could have notified the fire department of the fire when it began, amounted to a claim of negligence *per se* sufficient to go to the jury.  *Id.* at 728-29.

Here, the Georgia Department of Community Health ("DCH")[4] regulations provide for minimal requirements for the licensing and inspection of drug abuse treatment and education programs.  Ga. Comp. R. & Regs. 290-4-2-.02.  The Drug Abuse Treatment and Education Act ("the Act") authorized DCH to develop and enforce this regulation, stating that the purpose is, *inter alia*, "to ensure that every governing body which operates a drug abuse treatment and education program is

---

[4] Formerly known as the Department of Human Resources, Office of Regulatory Services, Healthcare Section.

licensed to do so[,] and to meet the rehabilitative needs of drug dependent persons while safeguarding their individual liberties." O.C.G.A. §§ 26-5-1 to -6. The Act tasks DCH with promulgating minimum standards of quality and service, encompassing the qualifications of staff, the content and quality of services, the safety of housing facilities, and the effectiveness of programs. *See* O.C.G.A. §§ 26-5-5 to -6. The regulations promulgated by DCH, in turn, require, among other things, that drug and alcohol rehabilitation centers create individualized treatment, discharge, and aftercare plans, employ clinical and medical directors, and implement policies and procedures for drug-testing employees and patients. (*See* Compl. ¶¶ 101-05).

Plaintiffs and class members believed that they were securing drug and alcohol rehabilitation services for themselves or other individuals at a facility that was legally and properly licensed. Defendant NNGA's failure to comply with Georgia regulations resulted in the failure to "safeguard" the liberties of its patients, as required by the Act. *See* O.C.G.A. § 26-5-2. As such, contrary to Defendant's argument, NNGA's negligent acts directly affected injured the class of persons the Act was designed to protect, in the manner in which the Act was designed to protect against.

## III. CONCLUSION

For the foregoing reasons, Defendant ABLE's Motion to Dismiss should be denied.  Should this Court determine, however, that Plaintiffs insufficiently pled the counts of their Complaint, Plaintiffs request the opportunity to amend the Complaint to cure any perceived deficiencies.  *See* Fed.R.Civ.P. 15(a) (providing that the court should freely give leave to amend a pleading when justice so requires).

Respectfully submitted,

**HARRIS PENN LOWRY, LLP**

/s/ Jeffrey R. Harris

_____

JEFFREY R. HARRIS
(Jeff@hpllegal.com)
Georgia Bar No. 330315
JED D. MANTON
(Jed@hpllegal.com)
Georgia Bar No. 868587

1201 Peachtree Street, N.E.
400 Colony Square, Suite 900
Atlanta, GA  30361
Telephone: (404) 961-7650
Facsimile: (404) 961-7651

**FRANKLIN LAW, LLC**
REBECCA C. FRANKLIN
(Rebecca@franklinlawllc.com)
Georgia Bar No. 141350

1201 Peachtree Street, N.E.
400 Colony Square, Suite 900
Atlanta, GA  30361
Telephone: (404) 961-5333

*Attorneys for Plaintiff*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to the Local Rules of the Northern District of Georgia, the above-signed counsel certifies that the foregoing document complies with all formatting requirements of the Local Rules and further certifies that this document is printed in Times New Roman font, 14-point, pursuant to Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**

**ASSOCIATION FOR BETTER LIVING AND EDUCATION**

**INTERNATIONAL'S MOTION TO DISMISS** with the Clerk of Court using

the CM/ECF system which will automatically send e-mail notification of such

filing to the following attorney of record:

| | |
|---|---|
| Cari K. Dawson, Esq.<br>Daniel F. Diffley, Esq.<br>David B. Carpenter, Esq.<br>Alston & Bird LLP<br>1201 W. Peachtree Street<br>Atlanta, GA 30309-3424<br><br>*Attorneys for Narconon International and Association for Better Living and Education International* | Matthew S. Coles, Esq.<br>Thomas M. Barton, Esq.<br>Coles Barton LLP<br>150 South Perry Street, Suite 100<br>Lawrenceville, GA 30046<br><br>*Attorneys for Narconon International and Association for Better Living and Education International* |
| Edward H. Lindsey, Jr., Esq.<br>James T. Hankins, Esq.<br>Goodman McGuffey Lindsey & Johnson, LLP<br>3340 Peachtree Road NE, Suite 2100<br>Atlanta, GA 30326-1084<br><br>*Attorneys for Narconon of Georgia, Inc.* | John K. Larkins, Jr., Esq.<br>William Taylor McNeil, Esq.<br>J.D. Dalbey, Esq.<br>Chilivis, Cochran, Larkins & Bever LLP<br>3127 Maple Drive NE<br>Atlanta, GA 30305<br><br>*Attorneys for Narconon of Georgia, Inc.* |
| John H. Fleming, Esq.<br>Valerie S. Sanders, Esq.<br>Stacey M. Mohr, Esq.<br>Sutherland Asbill & Brennan LLP<br>999 Peachtree Street NE, Suite 2300<br>Atlanta, GA 30309-3996 | |

| *Attorneys for Religious Technology Center, Inc.* | |

This 23rd day of July, 2013.

**HARRIS PENN LOWRY LLP**

/s/ Jeffrey R. Harris
_____

JEFFREY R. HARRIS
(Jeff@hpllegal.com)
Georgia Bar No. 330315
JED D. MANTON
(Jed@hpllegal.com)
Georgia Bar No. 868587

1201 Peachtree Street, NE
400 Colony Square, Suite 900
Atlanta, GA 30361
Telephone: (404) 961-7650
Facsimile: (404) 961-7651