IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BENJAMIN BURGESS, RHONDA BURGESS, HEIDI HOWARD, JOYCE MARTIN, BETH KARAMPELAS, TERRI DACY, and MICHAEL DACY, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | CIVIL ACTION NO. <br><br> 1:13-cv-02217 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| RELIGIOUS TECHNOLOGY CENTER, INC., ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL, NARCONON INTERNATIONAL, and NARCONON OF GEORGIA, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' RESPONSE  IN OPPOSITION TO DEFENDANT NARCONON OF GEORGIA, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiffs' Complaint stems from the Defendants' false, deceptive, or misleading business practices, which Plaintiffs' counsel uncovered after filing a case against Narconon of Georgia, Inc. ("NNGA") and Narconon International ("International") for the wrongful death of a former NNGA student.  That case led

to three years of litigation, extensive discovery, and a local news investigation, all spurred by the wrongful conduct of the Defendants. As such, Plaintiffs' claims arise from years of research and investigation. Plaintiffs file this response in opposition to Defendant NNGA's Motion to Dismiss, showing as follows:

## I. INTRODUCTION

Defendant NNGA's Motion to Dismiss amounts to an attempt to impermissibly heighten the pleading standards applicable to Plaintiffs' claims and evade meaningful litigation. Rather than respond to the legitimate, plausibility stated allegations of Plaintiffs' Complaint, Defendant NNGA contests Plaintiffs' factual allegations and improperly attempts to burden the Plaintiffs with establishing a reasonable likelihood of success on the merits of their claims. However, as shown herein, Plaintiffs met the appropriate burden at this stage of litigation, and Defendant's Motion to Dismiss must be denied.

Plaintiffs, Benjamin Burgess, Rhonda Burgess, Heidi Howard, Joyce Martin, Beth Karampelas, Terri Dacy, and Michael Dacy, filed their Complaint individually and on behalf of the class of others similarly situated, against Defendants Religious Technology Center, Inc. ("RTC"), Association for Better Living and Education International ("ABLE"), International, and NNGA, asserting claims sounding in fraud, contract, quasi-contract, and negligence, as well as

2

Georgia's Racketeer Influence and Corrupt Organizations ("RICO") statute, O.C.G.A. § 16-14-1, *et seq.*

Plaintiffs and the proposed class members paid money to one or more of the Defendants to enroll in the Narconon program, and to cover costs associated with books, housing, and related goods and services.  (Compl. ¶ 31).  The Narconon program was established in 1966 as a drug and alcohol rehabilitation program based on the writings of L. Ron Hubbard, a science-fiction writer and the founder of the Church of Scientology.  (*Id.* ¶ 38).  Narconon's treatment for drug and alcohol addicts is based exclusively on Hubbard's writings, also known as "technology" or "tech."  (*Id.* ¶ 41).  Narconon's proponents believe that strict adherence to the Hubbard technology alone will completely address the rehabilitation needs of its patients.  (*Id.* ¶ 46).  Therefore, patients receive no counseling or education in drug and alcohol rehabilitation, and the therapeutic discussion of drugs and their effects is actually discouraged.  (*Id.*).

Defendant NNGA provides or provided drug or rehabilitation services, based on the Narconon program, out of its principal place of business in Norcross, Georgia.   (*Id.* ¶¶ 28, 31).  As the parent/licensor of Defendant NNGA, Defendant International exercises direct control over the time, manner, and method of NNGA's operations.  (*Id.* ¶ 27).  Defendant International, in turn, is controlled by

Defendant ABLE, an umbrella group that oversees the drug and alcohol rehabilitation, education, and criminal-justice activities of the Church of Scientology. (*Id.* ¶ 24). Finally, Defendants ABLE, International, and NNGA are controlled by Defendant RTC, which oversees Church of Scientology activities and serves as the final arbiter and enforcer of orthodoxy for all Scientology-related activities and organizations. (*Id.* ¶¶ 21-22).

Through its websites, marketing materials, advertising, and personnel, the Defendants have repeatedly made a vast array of false and misleading claims and employed other deceptive techniques in their dealings with drug and alcohol addicts and their families. (*Id.* ¶ 74). These misrepresentations pertain to, among other things: the effectiveness of the Narconon program, which consists of a "sauna and vitamin" program and written "training routines" originally devised to teach communication skills to Scientologists; Narconon's purported success rate; Narconon's connection to Scientology; the certifications of NNGA's staff; NNGA's housing and "drug-free" environment; and the nature of its government licensing. (*Id.* ¶¶ 74-105). By reason of their justified reliance on Defendants' false statements and material misrepresentations, Plaintiffs and all class members suffered actual physical, mental, and economic harm, and they seek restitution, compensatory damages, and punitive damages. (*Id.* ¶¶ 170-72).

## II.  ARGUMENT AND CITATION OF AUTHORITY

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (holding that a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim "across the line from conceivable to plausible" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  A claim is facially plausible when the plaintiff's factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals . . . ." *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).  With this background in

mind, determining whether a complaint states a plausible claim for relief will, as the Supreme Court has stated, "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79.

## A. Plaintiffs Sufficiently Pled their Contract/Quasi-Contract Claims

Defendant NNGA's response to Plaintiffs' contract claims is an attempt both to prevent the people who actually paid for NNGA's "rehabilitation services" from seeking any relief for the breach of their agreement, and to evade the fact that it failed to perform its contractual obligations with good faith.

### 1. Breach of Contract (Count Two)

As acknowledged by Defendant (*See* Def. NNGA's Mot. to Dismiss, Br. in Supp. ("Def. Br.") at 7, n.2), in an action for breach of contract, the agreement alleged to have been breached may consist of multiple documents. *See Fisher v. Toombs Cnty. Nursing Home*, 479 S.E.2d 180, 183 (Ga. Ct. App. 1996).   In addition to encompassing multiple documents, an agreement may encompass implied terms "where it is reasonable and necessary to effect the full purpose of the contract and it is so clearly within the contemplation of the parties that they deemed it unnecessary to state." *Id*. at 184.

Under Georgia law, the financially responsible party under a contract has a legal interest in the performance of that contract. *Id.*  For example, in *Fisher*, the plaintiff signed a contract making her financially responsible for the care provided to her husband by the defendant nursing home. *Id.* at 183-84.  Although the plaintiff was not the beneficiary of her obligations under the contract, the Georgia Court of Appeals determined that the plaintiff was a promisor and thus had standing to sue the defendant when it released her husband from its care without notifying her. *Id.* at ("Even if all the benefits of the contract were construed to flow to [plaintiff's husband], that fact alone would not deprive [the plaintiff] of standing.  Consideration need not be a benefit accruing to the promisor, but may be a benefit accruing to another."); *see* O.C.G.A. § 13-3-42(d).

Here, the contracts entered into by the parties illustrate that the agreement consisted of multiple documents.  For example, the "Financial Policy and Agreement Form," signed by Plaintiffs and others assuming financial responsibility for the contract, references a separate document, the "Student Rules of Conduct," as part of its refund policy.  (See Def. Br., Exh. 1 at 2-3).  The Financial Policy states, "[The Student Rules of Conduct] have been explained to you and by signing them you have acknowledged that you understand all of these rules."  (*Id.* at 3).  The "Admission and Services Agreement" sets forth the

elements and courses of Narconon's "social educational based drug rehabilitation program." (*Id*. at 4). The Admission Agreement also references the Rules of Conduct, and it is signed by both the Narconon student and the "Financier," i.e., Plaintiffs and other class members. (*Id*. at 4-5). Finally, the Rules of Conduct, also signed by the Narconon student and the "Student's Representative," i.e., Plaintiffs and the class members, contain provisions regarding NNGA's policies, including:

2. <u>Drugs And Alcohol</u>: Non-prescribed drugs and alcohol are forbidden to be brought into the Narconon facility and may not be consumed away from the Narconon facility, while you are on the program. Drug use is grounds for immediate dismissal without refund.

3. <u>Selling or Possession of Illegal Drugs</u>: Selling, possessing or giving illegal drugs to another student is grounds for immediate dismissal without refund as well as reporting to appropriate legal authorities as indicated by the situation.

*Id.* at 6.

First, this Court must reject Defendant's argument that Plaintiffs are not parties to any contract with the Defendants aside from the "Financial Policy and Agreement." (Def. Br. at 7-8). Like the Plaintiff in *Fisher*, Plaintiffs assumed financial responsibility for the rehabilitation services to be delivered to others, and that financial responsibility provided them with certain rights under the contract.

As such, Plaintiffs have standing under the agreement with the Defendants to allege breach of contract.

Second, Plaintiffs dispute Defendant NNGA's argument that it is the only Defendant who has an obligation under the parties' agreement (*see id.* at 8), for the reasons set forth in Plaintiffs' responses to the other Defendants' Motions to Dismiss.  For purposes of Defendant NNGA's Motion to Dismiss, however, Plaintiffs will take NNGA's statement as acknowledging its contractual obligations.

Third, a review of the parties' agreement reveals that Plaintiffs may state a breach of contract claim on the grounds alleged.  (*See* Compl. ¶¶ 115-18).  As discussed above, an agreement may encompass implied terms where it is reasonable and necessary to effect the purpose of the contract.  *Fisher*, 479 S.E.2d at 184.  Moreover, under Georgia law, an agreement "impose[s] upon each party a duty of good faith and fair dealing in the performance and completion of their respective duties and obligations," which includes "substantial compliance with the spirit, and not merely the letter, of a contract."  *Id.* at 184.

Defendant NNGA argues that the contract did not contain guarantees that, *inter alia*: it was compliant with applicable laws and regulations; its staff members were certified in addiction counseling; and it would provide a drug-free

environment for its patients.  (Def. Br. at 9-10).  Defendant NNGA dismisses Plaintiffs' allegations as having no basis in the contract.   However, both to fulfill its agreement to provide drug and alcohol rehabilitation and to discharge its duty to perform in good faith, NNGA was required to comply with the aforementioned criteria in order to actually and legally treat drug and alcohol addiction.  *See, e.g., Regional Pacesetters v. Eckerd Drugs of Ga.*, 358 S.E.2d 481, 483 (Ga. Ct. App. 1987) ("[W]hatever may be fairly implied by the terms of the agreement is in the eyes of the law embodied in the agreement.").  Given that a defendant's compliance with the "spirit" of contract may be a jury question, *see Fisher*, 479 S.E.2d at 184, dismissal of Plaintiffs' breach of contract claims on this basis would be improper.

Fourth, Defendant argues that it was not liable for failing to maintain a drug-free environment because: this breach of contract occurred at Narconon patients' residences; NNGA was strictly an outpatient facility; and, therefore, it is not liable for the alleged conduct.  (Def. Br. at 9-10).  However, Plaintiffs have alleged that Defendant NNGA represented itself and operated as an inpatient, residential facility while concealing this fact from regulators, and Defendant's dispute with those alleged facts is an improper basis to argue for dismissal.

Defendant also argues that its reference to a "drug-free environment" in the contract was aspirational, but not a promise. (Def. Br. at 9). Given Defendant NNGA's role as a drug and alcohol rehabilitation provider, as well as the prominence of its drug and alcohol policy in the agreement between the parties, there is at least a factual dispute as to whether the duty of good faith was breached by the drug and alcohol problems at NNGA.

Finally, Defendant NNGA's statement that "there is no allegation in the Complaint that any of the Plaintiffs suffered any damages as a result of any alleged breach" is completely false. (*See* Def. Br. at 10). Plaintiffs alleged, "Defendant's breach proximately caused substantial damage to the Plaintiffs and the class, and Plaintiffs and the class members are entitled to recover damages." (Compl. ¶ 118).

### 2. Unjust Enrichment (Count Three)

Contrary to Defendant NNGA's position, Plaintiffs' allegation of a breach of contract claim does not prevent them from alleging unjust enrichment. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims."). In the event that this Court determines that Plaintiffs did not allege a plausible breach of contract claim as to Defendant NNGA,

Defendant would remain liable under Plaintiffs' allegation of unjust enrichment. (*See* Compl. ¶¶ 119-21).

"The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Smith Serv. Oil Co. v. Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001). Defendant argues that Plaintiffs are prevented from alleging an unjust enrichment claim because there is an express contract with NNGA. (Def. Br. at 16-17). However, should this Court determine that the contract between the parties was unenforceable or did not encompass Plaintiffs' injuries at the hands of the Defendants, Plaintiffs could proceed under the theory of unjust enrichment. *See, e.g., Cochran v. Ogletree*, 536 S.E.2d 194, 196-97 (Ga. Ct. App. 2000).

### 3. *Detrimental Reliance (Count Four)*

Finally, Defendant argues that detrimental reliance is not an independent cause of action under Georgia law. In Count Four, Plaintiffs alleged that they reasonably relied on Defendants' representations that NNGA patients would receive drug of alcohol rehabilitation services, that Defendants failed to live up to those representations, and Plaintiffs were "harmed by their reliance on Defendants' promise to perform," entitling them to damages. (Compl. ¶ 125). Plaintiffs

admittedly mislabeled this count as alleging detrimental reliance, rather than promissory estoppel. *See Houston v. Houston*, 600 S.E.2d 395, 396 (Ga. Ct. App. 2004) ("The elements of a promissory estoppel cause of action are: (1) defendant[s] made certain promises, (2) defendant[s] should have expected that plaintiffs would rely on such promises, (3) the plaintiff[s] did in fact rely on such promises, and (4) injustice can be avoided only by enforcement of the promise." (alterations omitted)).  Should this Court determine that Count Four was improperly pled, Plaintiffs request the opportunity to amend. *See* Fed.R.Civ.P. 15(a).

## B.  Plaintiffs Sufficiently Pled their Fraud Claim (Count One)

Pursuant to Fed.R.Civ.P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  The purpose of this particularity requirement is to "alert[ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotations omitted).  Rule 9's particularity requirements must be read in conjunction with Rule 8 "so as not to abrogate the concept of notice pleading." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988).  Rule 9 does not require the plaintiff to explain his entire case, only that he state the actions that

allegedly constitute fraud. *United States v. Gen. Dynamics*, 315 F. Supp. 2d 939, 945 (N.D. Ill. 2004).

While Defendant NNGA argues that Plaintiffs were required to provide the names, times, dates pertaining to Defendants' fraud, federal courts have observed that Rule 9(b)'s requirements can be met in other ways. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). A complaint may meet this requirement by describing the nature of the alleged misrepresentations, the general time frame, and the parties involved, without alleging the exact time and particular place of each misrepresentation. *See id.*

In the "Parties" portion of their Complaint, Plaintiffs provided a time period for the fraud by specifying when each proposed class representative sought the services of NNGA. (*See* Compl. ¶¶ 2, 6, 10, 14, 17). Plaintiffs then alleged eleven specific fraudulent statements and/or acts made by Defendants. (*See* Compl. ¶ 111). In so doing, Plaintiffs sufficiently alleged the "what" and "when" of the fraud. *See, e.g., Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1319-20 (D.C. Fla. 2002) (finding that the plaintiffs sufficiently alleged fraud when the complaint included, *inter alia*, specific misrepresentations and where they occurred). Likewise, Plaintiffs set forth the relationship among the Defendants as it pertains to the perpetrated fraud. (*See id.* ¶¶ 20-28, 62-73). Plaintiffs have also alleged that:

Defendants RTC, ABLE, and Narconon International control the time, manner, and method of Defendant NNGA's operations (*Id.*); Defendants ABLE, Narconon International, and NNGA misrepresent their connection to the Church of Scientology (*Id.* ¶¶ 80-81); and patients are referred to NNGA through purportedly objective Internet and telephone services that are actually run and/or paid for, in whole or in part, by International and/or NNGA (*Id.* ¶¶ 87-89).

Given this factual background, as alleged by Plaintiffs, combined with the number of ways in which Plaintiffs and the proposed class members have been defrauded, Plaintiffs complied with Rule 9(b) by providing Defendants with enough information to meaningfully respond.[1]  *See, e.g., Gen. Dynamics*, 315 F. at 945 (D.C. Ill. 2004) (finding that a *qui tam* relator alleging fraud was not required to provide names of employees who allegedly defrauded the government because those identities were in exclusive possession of employer).

Defendant NNGA also argues that Plaintiffs failed to allege the elements of fraudulent misrepresentation.  Under Georgia law, a claim for fraudulent misrepresentation lies where the defendant knowing made a false representation with the intent to deceive the plaintiff, and the plaintiff actually relied upon the

---

[1] Plaintiffs also provided support for one of Defendants' fraudulent statements, regarding the Narconon program's success rate, by attaching an email acknowledging that the 70% success rate quoted to Plaintiffs and class members was not supported by scientific evidence.  (*See* Compl., Exh. B).

defendant's representation, causing damages. *Morris v. Pugmire Lincoln Mercury, Inc.*, 641 S.E.2d 222, 224 (Ga. Ct. App. 2007). Here, Plaintiffs alleged that Defendants "knowingly and willfully made false representations of material facts to Plaintiffs and class members," that Plaintiffs and class members "actually relied upon those statements and misrepresentations," and that their justified reliance "proximately cause[d]" Plaintiffs and all class members "actual physical, mental, and economic harm." (Compl. ¶¶ 111-14). Plaintiffs also raised the issue of "whether the Defendants intended to induce the class members' reliance" on their false, deceptive, or misleading practices, but did so in the portion of the Complaint devoted to "Class Allegations." (Compl. ¶ 33).

By including all of the necessary elements of fraudulent misrepresentation in the Complaint, Plaintiffs arguably complied with Rule 8 notice pleading. However, should this Court determine that Plaintiffs' omission of "intent to induce" within the fraudulent misrepresentation subsection amounts to a failure to plead the request elements, Plaintiffs requests the opportunity to amend their Complaint pursuant to Fed.R.Civ.P. 15(a).

**D. Plaintiffs Sufficient Pled their Georgia RICO Claims (Counts Six to Ten)**

The Georgia RICO Act was enacted by the Georgia legislature to impose criminal penalties against those engaged in an "interrelated pattern of criminal

activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury," O.C.G.A. § 16-14-2(b), *see* O.C.G.A. § 16-14-5, and to provide civil remedies to compensate those injured by reason of such acts. *Williams Gen. Corp. v. Stone*, 614 S.E.2d 758, 759 (Ga. 2005). The Georgia RICO Act contains a liberal construction provision, providing that the Act shall be liberally construed to effectuate the remedial purposes embodied in its operative provisions. *See* O.C.G.A. § 16-14-2(b).

As a preliminary matter, contrary to Defendant's assertion, Plaintiffs are not required to plead civil RICO claims with particularity if they do not sound in fraud. *See Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355-56 (11th Cir. 2008) ("We now hold that RICO predicate acts not sounding in fraud need not necessarily be pleaded with the particularity required by Fed.R.Civ.P. 9(b)."). As such, Defendant's arguments regarding Rule 9(b) particularity are insufficient to dismiss Plaintiffs' Georgia RICO claims based on theft by deception (Count Six) and false statements to a government agency (Count Eight).

As an additional matter, while Defendants argue that Plaintiffs "made no attempt to provide allegations against each specific Defendant," Plaintiffs alleged that the Defendants RTC, ABLE, and International actively controlled NNGA's

daily activities such that any distinction between the organizations amounted to a mere formality.  (Compl. ¶¶ 22, 24, 27, 62-73).  Given the liberal construction applicable to Georgia's RICO statute and the purpose of Rule 9(b) to provide Defendants with notice and enough facts to meaningfully respond, Plaintiffs' RICO claims should be not be dismissed on this basis.

### 2.  *Mail/Wire Fraud (Count Seven)*

The offenses of mail and wire fraud require that a person: (1) intentionally participates in a scheme to defraud; and (2) uses or "causes" the use of the mail or wires for the purpose of executing the scheme.  *United States v. Ward*, 486 F.3d 1212, 1221-22 (11th Cir. 2007); *see also* 18 U.S.C. § 1343 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.").

Plaintiffs have met the requirements to state a Georgia RICO claim based on mail and wire fraud by alleging, *inter alia*, "Defendants *distributed* the [listed] false statements and/or representations *to* Plaintiffs and the class members through

the mail, telephone wire facilities, and/or Internet," and "Plaintiffs and all class members were unaware of the falsities of Defendants' material statements and representations, and *actually relied* upon those statements and misrepresentations." (Compl. ¶ 142-43 (emphasis added)).  For the reasons expressed in Part II-B, *supra*, Plaintiffs also satisfied Rule 9(b)'s particularity requirement.

### 3.  *Credit Card Fraud and Identity Theft (Counts Nine and Ten)*

Plaintiffs properly pled credit card fraud and identity theft as it pertains to those Plaintiffs who fell victim to this aspect of Defendants' fraud: Plaintiffs Benjamin Burgess, Rhonda Burgess, Michael Dacy, and Terri Dacy.  (*See* Compl. ¶¶ 4, 19).  To the extent that Defendant argues that not all Plaintiffs were victims of credit card fraud and identity theft, the Plaintiffs and class members that have been victims of these RICO predicate acts can be dealt with through the use of subclasses, if necessary.

Defendant NNGA also argues that two instances of credit card and identity theft are insufficient to establish a pattern of racketeering activity.  Under Georgia's RICO statute, a pattern of racketeering is defined as:

> Generally, a pattern of racketeering activity statute means "[e]ngaging in at least two acts of racketeering activity . . . that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided that at least one of such acts occurred after July 1, 1980, and that the last of the

incidents occurred within four years . . . after the commission of a
prior incident of racketeering activity.

O.C.G.A. § 16-14-3.

Plaintiffs alleged that the Burgesses were the victims of credit card and
identity fraud in 2011, that the Dacys fell victim to the same scheme in 2009, and
that the credit card fraud and identity theft were each part of a pattern of
racketeering activity.  (Compl. ¶¶ 2, 4, 17, 19, 156, 164).  The facts, as alleged,
clearly fall within Georgia's definition of a pattern of racketeering activity.
NNGA's attempt to characterize the two alleged events as isolated incidents is
effectively a fact dispute not properly raised in a motion to dismiss.

### 4.  *False Statements to a Government Agency (Count Eight)*

Defendant NNGA also contests whether its false statements to government
regulators constituted a "pattern" of racketeering activity.  While Defendant
characterizes its acts as a single license application, Plaintiff has alleged
"numerous counts of providing false statements and writings to a government
agency" on "all license applications," as well as renewals, "from 2002 to present."
(Compl. ¶¶ 98, 149, 150).  As such, Plaintiffs sufficiently alleged a pattern of
making false statements to a government agency.  *See* O.C.G.A. § 16-14-3.

As to proximate cause, Defendant NNGA argues that Plaintiffs' injuries
were "nothing more than an eventual consequence" of the false statements.  (Def.

Br. at 24-25).  In support, Defendant cites to *Maddox v. S. Engineering Co.*, 500

S.E.2d 591 (Ga. Ct. App. 1998), a case that is inapposite to Plaintiffs' claims for

two reasons.  First, *Maddox* dealt with proximate cause at the *summary judgment*

*phase* of litigation, not the motion to dismiss phase.  Second, the *Maddox* Court

determined that there was no evidence that the state agencies relied on the

defendant's representations.  *Id.* at 595.

Here, Plaintiffs sufficiently pled that their injuries were a "direct and

proximate" result of Defendant NNGA's false statements to the government.  (See

Compl. ¶153).  Moreover, unlike in *Maddox*, where there was no evidence that the

government relied on the defendant's false statements, here, Plaintiffs not only

sufficiently alleged that the government relied on Defendant NNGA's false

statements (Compl. ¶ 151), but also supported that allegation by pointing to

specific falsities that directly pertained to both Defendant's licensing and

Plaintiffs' injuries.  (Compl. ¶¶ 101-05, 150-53).  As such, dismissal of Count

Eight is not warranted.

**E.  Plaintiffs Sufficiently Pled Negligence *Per Se* (Count Five)**

Plaintiffs have properly asserted that NNGA is liable for negligence *per se*.

(*See* Compl. ¶¶ 67, 68, 70, 71).  For the violation of a statute or regulation to

amount to negligence *per se*, Georgia courts look to the purposes of the legislation

21

to determine: (1) whether the injured person falls within the class of persons it was intended to protect; and (2) whether the harm complained of was the harm it was intended to guard against. *Walter v. Orkin Exterminating Co*., 385 S.E.2d 725, 728 (Ga. Ct. App. 1989).

For example, in *Walter*, the court considered state administrative rules governing pest control companies providing that the companies should, for example, notify the local fire and police departments before fumigating a residential or commercial building, and post a watchman after fumigation to "prevent the entry of an unauthorized person." *Id.* at 726-27.  At some point after the defendant company in *Walter* fumigated the plaintiff's house, the house caught fire and burned to the ground.  The court determined that the defendant's failure to post a watchman after fumigation, who presumably could have notified the fire department of the fire when it began, amounted to a claim of negligence *per se* sufficient to go to the jury.  *Id.* at 728-29.

Here, the Georgia Department of Community Health ("DCH")[2] regulations provide for minimal requirements for the licensing and inspection of drug abuse treatment and education programs.  Ga. Comp. R. & Regs. 290-4-2-.02.  The Drug Abuse Treatment and Education Act ("the Act") authorized DCH to develop and

---

[2] Formerly known as the Department of Human Resources, Office of Regulatory Services, Healthcare Section.

enforce this regulation, stating that the purpose is, *inter alia*, "to ensure that every governing body which operates a drug abuse treatment and education program is licensed to do so[,] and to meet the rehabilitative needs of drug dependent persons while safeguarding their individual liberties." O.C.G.A. §§ 26-5-1 to -6. The Act tasks DCH with promulgating minimum standards of quality and service, encompassing the qualifications of staff, the content and quality of services, the safety of housing facilities, and the effectiveness of programs. *See* O.C.G.A. §§ 26-5-5 to -6. The regulations promulgated by DCH, in turn, require, among other things, that drug and alcohol rehabilitation centers create individualized treatment, discharge, and aftercare plans, employ clinical and medical directors, and implement policies and procedures for drug-testing employees and patients. (*See* Compl. ¶¶ 101-05).

Plaintiffs and class members believed that they were securing drug and alcohol rehabilitation services for themselves or other individuals at a facility that was legally and properly licensed. Defendant NNGA's failure to comply with Georgia regulations resulted in the failure to "safeguard" the liberties of its patients, as required by the Act. See O.C.G.A. § 26-5-2. As such, contrary to Defendant's argument, NNGA's negligent acts directly affected injured the class of

persons the Act was designed to protect, in the manner in which the Act was designed to protect against.

Defendant NNGA disputes whether NNGA's negligent conduct was the proximate cause of Plaintiffs' injuries.  In support, Defendant cites *Combs v. Atlanta Auto Auction, Inc.*, 650 S.E.2d 709, 715 (Ga. Ct. App. 2007), in which the court determined that the defendant's failure to obtain a certificate of occupancy for its facility did not proximately cause the accident resulting in plaintiff's injuries, because the accident would have occurred without the certificate. However, in the instant case, Defendants failed to comply with applicable regulations requiring, *inter alia*, a drug-free environment, qualified staff, safe living conditions, and effective rehabilitation programs – the lack of which directly lead to Plaintiffs' injuries.  As such, the injuries Plaintiffs suffered were the "natural and probable consequence" of Defendants' negligence.  *See Combs*, 650 S.E.2d  at 715 ("In determining what is proximate cause the true rule is, that the injury must be the natural and probably consequence of the negligence, such [that it] might and ought to have been foreseen by the wrong-doer . . . .").

## III. CONCLUSION

For the foregoing reasons, Defendant NNGA's Motion to Dismiss should be denied.  Should this Court determine, however, that Plaintiffs insufficiently pled

the counts of their Complaint, Plaintiffs request the opportunity to amend the Complaint to cure any perceived deficiencies. *See* Fed.R.Civ.P. 15(a) (providing that the court should freely give leave to amend a pleading when justice so requires).

Respectfully submitted,

**HARRIS PENN LOWRY LLP**

/s/ Jeffrey R. Harris

_____

JEFFREY R. HARRIS
(Jeff@hpllegal.com)
Georgia Bar No. 330315
JED D. MANTON
(Jed@hpllegal.com)
Georgia Bar No. 868587

1201 Peachtree Street, N.E.
400 Colony Square, Suite 900
Atlanta, GA  30361
Telephone: (404) 961-7650
Facsimile: (404) 961-7651

**FRANKLIN LAW, LLC**
REBECCA C. FRANKLIN
(Rebecca@franklinlawllc.com)
Georgia Bar No. 141350

1201 Peachtree Street, N.E.
400 Colony Square, Suite 900
Atlanta, GA  30361
Telephone: (404) 961-5333

***Attorneys for Plaintiff***

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to the Local Rules of the Northern District of Georgia, the above-signed counsel certifies that the foregoing document complies with all formatting requirements of the Local Rules and further certifies that this document is printed in Times New Roman font, 14-point, pursuant to Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing

**PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANT**

**NARCONON OF GEORGIA, INC.'S MOTION TO DISMISS** with the Clerk

of Court using the CM/ECF system which will automatically send e-mail

notification of such filing to the following attorney of record:

| | |
|---|---|
| Cari K. Dawson, Esq.<br>Daniel F. Diffley, Esq.<br>David B. Carpenter, Esq.<br>Alston & Bird LLP<br>1201 W. Peachtree Street<br>Atlanta, GA 30309-3424<br><br>*Attorneys for Narconon International<br>and Association for Better Living and<br>Education International* | Matthew S. Coles, Esq.<br>Thomas M. Barton, Esq.<br>Coles Barton LLP<br>150 South Perry Street, Suite 100<br>Lawrenceville, GA 30046<br><br>*Attorneys for Narconon International<br>and Association for Better Living and<br>Education International* |
| Edward H. Lindsey, Jr., Esq.<br>James T. Hankins, Esq.<br>Goodman McGuffey Lindsey &<br>Johnson, LLP<br>3340 Peachtree Road NE, Suite 2100<br>Atlanta, GA 30326-1084<br><br>*Attorneys for Narconon of Georgia, Inc.* | John K. Larkins, Jr., Esq.<br>William Taylor McNeil, Esq.<br>J.D. Dalbey, Esq.<br>Chilivis, Cochran, Larkins & Bever LLP<br>3127 Maple Drive NE<br>Atlanta, GA 30305<br><br>*Attorneys for Narconon of Georgia, Inc.* |
| John H. Fleming, Esq.<br>Valerie S. Sanders, Esq.<br>Stacey M. Mohr, Esq.<br>Sutherland Asbill & Brennan LLP<br>999 Peachtree Street NE, Suite 2300<br>Atlanta, GA 30309-3996<br>*Attorneys for Religious Technology<br>Center, Inc.* | |

This 23rd day of July, 2013.

**HARRIS PENN LOWRY LLP**

/s/ Jeffrey R. Harris
_____
JEFFREY R. HARRIS
(Jeff@hpllegal.com)
Georgia Bar No. 330315
JED D. MANTON
(Jed@hpllegal.com)
Georgia Bar No. 868587

1201 Peachtree Street, NE
400 Colony Square, Suite 900
Atlanta, GA 30361
Telephone: (404) 961-7650
Facsimile: (404) 961-7651